


IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**CHRISTOPHER JONES**

**Plaintiff,**

**v.**

**BEDROCK CAPITAL GROUP, INC**
**RICHARD J. RANDOLPH, III**
**JAMYE ALLEN,**
**JOHN DOES 1-8, et al:**

**Defendants.**

**CIVIL ACTION FILE NO.**

1:21-CV-4434

**COMPLAINT**

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

COMES NOW Plaintiff CHRISTOPHER JONES and states his Complaint against Defendants Bedrock Capital Group, Inc., Richard J. Randolph, Jayme Allen, and John Does 1-8 ("Defendants") as follows:

## NATURE OF THE ACTION AND PARTIES

1.

a) The Nature of The Action And Parties are fully incorporated into the Causes of Action herein. Plaintiff was recently Chief Executive Officer and shareholder of Defendant Bedrock Capital Group, Inc. and E.F. Block Georgia ("Bedrock" or the "Company"), and otherwise held a beneficial ownership interest in the Company during all times material to this action.

b) Plaintiff brings this action based upon Plaintiff's right as Chief Executive Officer and as a minority shareholder to assert a direct action against Defendants to recover damages attributable to Defendants' collective tortious conduct that constitutes a breach of Defendants' fiduciary duties as former Chief Executive Officer or present Board Chairman to Plaintiff and for wrongful termination. Plaintiff shows here that Defendants have also conspired and acted collectively to "freeze out" Plaintiff from any participation whatsoever in the Company, and otherwise oppress and prevent Plaintiff from being able to perform his duties as CEO and from benefiting from his employment and/or ownership interest therein. Such actions serve to specifically impair the Plaintiff's reputation and the value and marketability of Plaintiff's authority and shares by denying him of gainful employment by this wrongful termination action.

Plaintiff was notified via email from Defendant Jayme Allen and Defendant Richard Randolph criminal defense attorney Daniel D. Mr. D knows or should know that Defendant Bedrock Capital Group, Inc is legally prohibited from collecting investment funds and that his client Richard Randolph is also prohibited by Court order from actively holding an office, selling shares, units, or collecting investments, among other things from the public.

c) At all times relevant to this Complaint Defendant Jayme Allen does not and has never had the authority to terminate the Chief Executive Officer, nor does Defendant Richard Randolph have any authority whatsoever to terminate the Chief Executive Officer, even by proxy or limited power of attorney under Georgia law. Defendant Richard Randolph is currently under a 78-month federal sentence and then a three-year supervised release term. At best, it is likely to be at least ten years before he is before any Board for consideration of returning to an active qualified position with the Company. The Georgia Limited Power of Attorney is hereby being challenged on its face as well as in nature and in its legal authority under Georgia Law. There were no written or established provisions by the Company to acknowledge, or respect any Georgia Limited Power

of Attorney for Defendant Richard J. Randolph III, nor was there ever any action by the Board to acknowledge and accept Defendant Jayme Allen as a bona fide proxy, and to the extent of such limitations is demanded by a declaratory judgement which is sought by the Plaintiff through the Courts. Only Company Board of Directors can terminate a Chief Executive Officer. There are no minutes from the Board of Directors authorizing such termination. The Plaintiff submit that there has been no action by the Board of Directors whatsoever granting termination of the Chief Executive Officer.

d) The Plaintiff brings this action derivatively on behalf of himself and others similarly situated, as well as in the interest of justice because Defendant Bedrock Capital Group, Inc was and is the catalyst for which defendant Randolph used to scam investors, and Plaintiff brings this action to recover corporate assets investors' principle and return on investment that have been diverted from the Company, as well as to recover improper dividends that have been distributed unevenly and improperly by the Company under Defendant Randolph as CEO and at the instance and direction of Defendant Randolph as Chairman of the Board of Directors, in conspiracy with the other Defendants. Defendant Jayme Allen, individually and through a Georgia Limited Power of Attorney for Defendant Richard Randolph, conspired with, and otherwise operated with the cooperation of Defendants who controls a majority interest in Bedrock Capital Group, Inc. through which he has orchestrated a pattern of frauds, misappropriation, misconduct and the creation of fraudulent investment documents and other distributions for the benefit of himself and the other Defendants, most of whom are "favored shareholders." The Plaintiff will show unto the Court.

E1) The Defendants admit that are terminating and separating from Plaintiff because he withdrew Bedrock Capital Group, Inc from the Georgia Secretary of State. This is proof of retaliation and harassment under Title VII of the Civil Rights Act, 1964. This action is not a

collusive one to confer jurisdiction that this Court would otherwise lack.

e) Plaintiff Christopher Jones was recruited by Defendant Richard Randolph, III to serve as Chief Executive Officer for Bedrock Capital Group, Inc, Bedrock Capital Group Holdings, LLC,. Bedrock Capital Real Estate Holdings, LLC as well as CEO of E.F. Block Georgia LLC, Plaintiff also became a shareholder in the Company at the acceptance of the position.

f) Prior to that time, Plaintiff was Managing Member of Equityworks, LLC a South Carolina Limited Liability Company.

g) On or about September 7, 2021 Plaintiff accepted offer to be serve as Chief Executive Officer in exchange for $125,000 per year with bonuses and benefits. In addition to being entitled to a revenue share of the Company's profits. Accordingly, at all times relevant hereto, Plaintiff was vested with the authority to manage Company's day to day activities. Plaintiff had a fiduciary duty of care, duty of loyalty and a duty of disclosure.

h) Plaintiff fairly and adequately represents the interests of the Company in enforcing the rights of the Company.

i) Out of an abundance of caution, on October 12, 2021 Plaintiff served the Georgia Secretary of State with a Notice of Withdrawal of the Company from the Georgia Secretary of State's database in good standing, see O.C.G.A. § § 14-3-1520. A true and correct copy of the October 12, 2021 Withdrawal is attached hereto as Exhibit "A". Previously, on April 1, 2021 Defendant Randolph pled guilty for violating certain Securities and Exchange laws and restrictions, and then again on April 9, 2021 Defendant Randolph pled guilty to a parallel criminal offense in the Northern District of Georgia. On August 6, 2021 defendant Randolph was sentence to 78 months in the BOP. Defendants Randolph surrendered to the BOP on September 21, 2021. Defendant Randolph and Plaintiff Jones were seemingly close friends. Plaintiff Jones spoke at Defendant Randolph sentencing in hopes of home confinement and/or a CCC sentence. Plaintiff Jones even

privately approached the Federal prosecutor and begged for leniency for Defendant Randolph. There was clearly a close relationship between this Plaintiff and Defendant Randolph. Plaintiff accepted the responsibilities of the Chief Executive Officer after being approach by Defendant Randolph on two occasions to take the position. Prior to Randolph surrender to BOP, both spent a significant amount of time together discussing the transition.

j) Plaintiff also brings this action to obtain a declaratory judgment that specific transactions previously engaged in by Richard Randolph or the Company, whereby shares, units or equity were sold by Richard Randolph or the Company are in violation of the August 6, 2021 Judge Grimberg's sentencing requirements, and the SEC April 1, 2021 penalty document Exhibit____, as well as a violation of Company Bylaws and that there was a violation in providing questionable Memorandum of Understandings and Membership Agreements to investors.

k) Plaintiff seeks preliminary and permanent injunctive relief to enjoin Defendants from engaging in business transactions inconsistent with the Court's Order, and with the Company's ordinary course of business or that constitute *de facto* distributions to defendant Randolph and favored shareholder. Plaintiff further seeks an emergency injunction to enjoin Defendant Randolph from conducting business from federal prison. Plaintiff further seeks to enjoin Defendant Randolph from further retaliation and harassment against Plaintiff for withdrawing the Bedrock Capital Group, Inc. entity from the Georgia Secretary of State because this specific entity was directly involved with the fraudulent conduct of Defendant Randolph and operates as a detriment to the Company. On or about October 2, 2021 Plaintiff and Defendant Jayme Allen met with potential investors and secured $88,000 for the initial purchase of 43 manufacturing molds. Plaintiff Jones required that potential investor pay direct to suppliers to gain credibility. However, immediately after the agreed terms by zoom call with the overseas suppliers KBM, Defendant Allen on direction from Randolph sent the investor wiring instructions for Bedrock Capital Group, Inc. and not the wiring

instructions for KBM, (Denmark). Naturally, this angered the potential investor and they committed to conduct a thorough due diligence and discovered that Bedrock Capital Group, Inc. is owned by Defendant Richard Randolph who is restricted by the SEC and the Sentencing Court. The potential investor collected all court documents and pulled out of direct investing the sum of $200,000, of which the $88,000 for the molds was also cancelled. Plaintiff will show that such actions and conduct were improperly taken by Defendants to violate Defendant Randolph agreement with the Sentencing Court, and detrimentally impact the Company's ability to gain profitability and value, and reduce the marketability of Company shares.

l) Plaintiff further seeks appointment of an auditor to examine the books and records of the Company, and conduct an accounting and/or audit of prior unauthorized distributions by the Company so that such distributions may be recovered for the benefit of the Company, investors and Plaintiff may recover their fair share of these distributions.

m) Finally, Plaintiff seeks redress on behalf of the Company, and himself for fraud, conversion, conflict of interest transactions and the intentional breach of fiduciary duty by Defendants in connection with the operation and management of the Company as well as to seek remedy for the wrongful termination action taken against him.

Plaintiff Christopher Jones is a citizen and resident of Greenville, Carolina and at the current rate would own__?__ shares in the Company. (Audit Requested).

## **The Parties**

3.

Defendant Bedrock Capital Group, Inc is a corporation organized and existing under the laws of the State of Delaware and the State of Georgia, with its principal place of business located in Atlanta, Fulton County, Georgia. Defendants are an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

This Court has personal jurisdiction over Defendant Bedrock Capital Group, Inc. ("hereinafter referred to as Bedrock"). Defendant Bedrock Capital Group, Inc. dba E.F. Block Georgia is a for-profit Delaware corporation and Georgia foreign corporation. At all times relevant, Defendant E.F. Block Georgia, LLC operated its business within the State of Georgia.

4.

Defendant Richard Randolph, is a citizen of Georgia, who resides in Atlanta, Georgia. Mr. Randolph was the former CEO, director and majority shareholder of the Company, prior to his incarceration, and personally purports to own at least 51% shares of the Company.

5.

Defendant Jamye Allen is the romantic interest of Defendant Richard Randolph and is employee of E.F. Block Georgia as Director of Recycling. Ms. Allen is a citizen of Georgia who resides in Atlanta, Fulton County, Georgia. Plaintiff is not sure of the number of shares Ms. Allen owns.

6.

Defendant John Does 1-8 are believed to have acted in collusion with named Defendants to retaliate and harass Plaintiff for his dissolving of Bedrock Capital Group, Inc. Atlanta Fulton County, Georgia. An approved audit is needed to appraise the number of units and shares outstanding for the Company.

## JURISDICTION AND VENUE

Plaintiff is a citizen of South Carolina. Defendants are citizens of Georgia. Accordingly, there is diversity of citizenship between the parties within the meaning of 28 U.S.C. § 1332. Moreover, the amount in controversy, without interest and costs, exceeds the sum or value ($75,000) required by 28 U.S.C. § 1332. Accordingly, this Court may exercise subject matter jurisdiction over this action.

7..

The Court has original subject-matter jurisdiction pursuant to 18 U.S.C. §1331 because this action arises, in part, under Title VII 42 U.S.C.§ 1981, 42 U.S.C.§ 2000e.

The Court also has subject-matter jurisdiction pursuant to 28 U.S.C. §1332. The Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction 28 U.S.C. §1367.

Venue is also appropriate in this District and Division pursuant to 28 U.S.C. § 1391 and Local Rule 3.1 (N.D. Ga).

8.

The majority of the outstanding shares in Bedrock Capital Group, Inc. are owned and/or controlled by Defendant Richard Randolph, III. If and to the extent Plaintiff is required to assert certain claims derivatively on behalf of the Company, Plaintiff shows that given the nature of these asserted claims and the antagonistic managerial control of the Company by Defendant Richard Randolph and other Defendants, Plaintiff's claims are unavoidably opposed by the Company. As such, Bedrock Capital Group, Inc. is properly aligned as a Defendant in this proceeding. See Duffey v. Wheeler, 820 F.2d 1161 (11th Cir. 1987).

9.

Nonetheless, Plaintiff shows that the actions of Defendants taken in concert have caused special and distinct injuries to Plaintiff, thereby authorizing a direct action in this case. See Rosenfeld v. Rosenfeld, 286 Ga. App. 61 (2009).

10.

Moreover, a direct action is proper in this case because Bedrock Capital Group, Inc. is a closely held corporation and the facts and circumstances of this matter show that the reasons for the general rule requiring a derivative suit do not apply. Id.; Kirk v. First Nat. Bank of Columbus, 439 F. Supp. 1141 (M.D. Ga. 1977); Stoker v. Bellemeade, LLC, 272 Ga. App. 817, 821 (3) (615 SE2d 1) (2005).

11.

To wit: (a) Defendant Bedrock is a closely held corporation; (b) there is no risk of multiple suits by shareholders in this case at this time; (c) there is no need for protection of corporate creditors in this case (financial statements have not been provided to plaintiff as CEO, however no significant debts are demonstrated);

(d) in the event of a recovery, reinstating Bedrock Capital Group, Inc with the Georgia Secretary of State is not an option, legally, and merely increasing all share values of Defendant Bedrock would not adequately compensate Plaintiff; and (e) it would be futile to require Plaintiff, a minority shareholder, to sue on behalf of Defendant Bedrock Capital Group, Inc when the recovery from such a suit would merely return funds to the control of the individual Defendant shareholders and there is no ready market for the minority shares of Defendant Bedrock Capital Group, Inc. in any case. Id.

12.

As such, Plaintiff is authorized to bring this action against Defendants as a direct action. Id.

13.

f) Defendants continue to breach their fiduciary obligations to Plaintiff and to existing investors and are effectively wasting Company money and assets in which Plaintiff has a legitimate ownership interest.

g) It is an obvious and inherent breach of fiduciary duty to continue to operate Bedrock Capital Group, Inc., in any regard or to take new investment funds, depreciate and/or waste its corporate assets, as well as assume the risks associated with this enterprise, without properly accounting to and/or compensating investors or Plaintiff as a significant minority shareholder under such circumstances.

h) By way of example, Plaintiff recently learned from widespread reports of another set of investors secondary to the 14 previous investors who invested their money with Defendant Randolph through Defendant Bedrock Capital Group, Inc. The previous investors, now victims have not received any restitution and would not receive any restitution through Defendant Bedrock Capital Group, Inc. because this Company does not have $1.6MM in the bank or does not have $1,6MM in assets. Defendant Bedrock Capital Group, Inc. would have to raise new funds from new investors, (which is prohibited and is illegal). Plaintiff quickly discovered that there are a second round of investors with a minimum of $1,214,000 cash invested in the same Company, Defendant Bedrock capital Group, Inc. Defendant Randolph personally and completely destroyed the ability for Defendant Bedrock Capital Group, Inc, to be a viable entity having the ability to go forward and raise capital legitimately. For this, the Plaintiff was wrongfully terminated.

**COUNT ONE: TITLE VII - RETALIATION AND HARASSMENT**

i). Plaintiff incorporates herein paragraphs a through h of his Complaint. Defendants have engaged in intentional retaliation and harassment and created a hostile work environment in the terms

and conditions of the Plaintiff's employment, including, but not limited to, the Plaintiff's wrongful termination committed by these Defendants.

Plaintiff's claims against the Bedrock Capital Group, Inc. ("BCG") include claims for disparate treatment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981 (Counts I,)

j). Defendants' conduct violates Title VII. On October 18, 2021, the Plaintiff was notified via email from Defendant Jay Allen on behalf for Defendant Richard Randolph that he was terminated for dissolving Bedrock Capital Group, Inc.

k). Plaintiff filed a timely Charge of Retaliation and Harassment with the Equal Employment Opportunity Commission ("EEOC"). The Plaintiff has satisfied all statutory prerequisites for filing this action. The Plaintiff has filed this action under Title VII within ninety (90) days after receipt of his right to sue. Defendants' conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

l). Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages pursuant to 42 U.S.C. § 1981. Defendants have engaged in retaliatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981. In order to establish a prima facie case of retaliation under Title VII and 42 U.S.C. § 1981, the plaintiff will show (1) that he engaged in a protected activity, (2) that his employer took a "materially" adverse action against him and (3) that a causal connection existed between the activity and the adverse action.

m). Title VII protects participation and opposition activity. 42 U.S.C. § 2000e–3(a). The participation clause protects an employee from retaliation where he "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII.

Id. The Plaintiff has opposed any unlawful practice under Title VII. The plaintiff will show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and created an abusive working, he is also protected from retaliation for exercising his duty as Chief Executive Officer.

n). Plaintiff is entitled to recover monetary damages directly and proximately caused by Defendants' respective participation in breaches of fiduciary duties to Plaintiff, and the company and for Defendants' self-dealing, waste, and participation in improper conflict of interest transactions.

**COUNT TWO: BREACH OF FIDUCIARY DUTY**

o). Plaintiff repeats and realleges the allegations set forth herein as if all such allegations were restated verbatim.

p). Defendant Richard Randolph, as a former Chairman of the Board of the Company, the former CEO of the Company, and its majority shareholder, occupied a position of trust and special confidence with respect to the investors and the Plaintiff. The relationship between Defendant Randolph, investors and Plaintiff requires Mr. Randolph to act in good faith with respect to the duties.

q). Defendants Richard Randolph has engaged in specific actions, as well as a pattern of conduct, whereby he has directed Company activities from prison and distributions for his own benefit and the benefit of certain family members and friends prior to prison, while discriminating against and oppressing the Plaintiff. He performed as an officer, chairman of board, and majority shareholder of the Company without legal or corporate authority to do so.

**COUNT THREE: Failure to Pay Minimum Wage**

r). The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

s). The Fair Labor Standards Act of 1938 ("FLSA'), 29 U.S.C. 201, et seq. applied to Plaintiff's employment with Defendants at all times relevant herein.

Section 206 of the FLSA, 29 U.S.C. 206(a)(1)(C), mandates that employers pay all employees engaged in commerce or in the production of goods for commerce, minimum wages for their work in an amount set by federal law. Section 218 of the FLSA, 29 U.S.C. 218(a), provides that employers pay such a minimum wage as established by state law, should it be higher than the federal minimum. During the relevant time period the federal minimum wage was $7.25 per hour. For the entire period of employment, Plaintiff was not paid any wages, nor any compensation at all.

t). Defendants failed to maintain proper and accurate records as mandated by the FLSA. Upon information and belief, Defendants have not preserved any records substantiating the hours worked and monies which are due to Plaintiff. The Plaintiff has calculated his due pay by way of the start date September 7, 2021 and wrongful termination date of October 18, 2021 with an average of 12 hours per day.

u). Defendants willfully, intentionally, and with reckless disregard, failed to pay Plaintiff at wage even at a minimum wage, for all of the hours worked in violation of FLSA.

Because of Defendants' unlawful failure and refusal to pay Plaintiff wages, Plaintiff is entitled to, pursuant to 216(b) of the FLSA, 29 U.S.C. 216(b), to recover his unpaid wages, including interest and liquidated damages thereon, in an amount to be proven at trial, as well as reasonable attorney's fees and costs.

As a direct consequence of Defendants' conduct as alleged herein, Plaintiff has been injured in its business, property and reputation causing Plaintiff to suffer monetary damages in an amount not

less than $500,000, said damages to be proven at the time of trial.

For the reasons stated in the preceding section, Plaintiff is entitled to punitive damages from the Defendants, and each of them.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

Finding that all defendants are jointly and severally liable for all damage caused to Plaintiff;

1. Awarding Plaintiff monetary damages in an amount not less than $500,000, said amount to be proven at trial;
2. Awarding Plaintiff enhanced monetary damages pursuant to Title VII.
3. Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees, costs, and disbursements;
4. Awarding Plaintiff punitive damages in the sum of not less than $1,000,000 or an amount otherwise to be decided by a jury; and
5. Granting such other relief as the case may require or as may be deemed proper and equitable.

Dated this 19th day of October, 2021.

Respectfully submitted,

Christopher Jones, Pro se
3795 East North Street Ste. 16
Greenville, South Carolina 29615
864-526-2800
intljonesc@gmail.com

# EXHIBIT



E F Block Georgia, LLC | Our Mission is to impower the Georgia community by providing safe, sustainable, and affordable residential and commercial structures that increase self-sufficiency and sustainable awareness.

**From:** ecorp.noreply@sos.ga.gov <ecorp.noreply@sos.ga.gov>
**Sent:** Tuesday, October 12, 2021 4:50 PM
**To:** Richard Randolph | Level Up 700, Inc.; intljonesc@gmail.com; eastern@northwestregisteredagent.com; intljonesc@gmail.com
**Subject:** Business Withdrawal

Dear CHRISTOPHER JONES,

This is a confirmation that the **Business Withdrawal** filing for **Bedrock Capital Group, Inc.** has been successfully submitted to the Georgia Secretary of State's office on 10/12/2021 . If the filing is accepted, you will receive an email confirmation along with a certificate. If the filing is not accepted, you will receive an email notification with the reason(s) for the rejection and instructions on how to refile.

Thank you.

Sincerely,

Georgia Secretary of State - Corporations Division
2 Martin Luther King Jr. Dr.
313 West Tower
Atlanta, Georgia 30334-1530
Phone: (404) 656-2817
Website: http://sos.ga.gov/

(Note: This email has been sent by an automated process. Please do not reply to it.)

If you have any questions, please contact Jamye Allen on behalf of Richard J. Randolph III (678)-491-4706.

Regards,



Richard J. Randolph III
Bedrock Capital Group Inc.
Chairman of the Board
Jamye Allen to sign on behalf of Richard Randolph/Power of Attorney Attached




E F Block Georgia, LLC | Our Mission is to impower the Georgia community by providing safe, sustainable, and affordable residential and commercial structures that increase self-sufficiency and sustainable awareness.

*Georgia recognizes the doctrine of employment at will. Employment at will means that in the absence of a written contract of employment for a defined duration, an employer may terminate an employee for good cause, bad cause, or no cause at all, so long as it is not an illegal cause.*

## Separation/Termination Notice of Employment

Attn: Christopher Jones
3795 East North Street
Greenville, SC 29615

Date: 10/18/2021

Dear Christopher,

*~ Per Richard J. Randolph III ~*

This letter confirms that your employment with Bedrock Capital Group, Inc. DBA E F Block Georgia, LLC is terminated, effective as of October 18, 2021.

Due to violations and actions which have been detrimental to Bedrock Capital Group, Inc. and E F Block Georgia, LLC, you are officially terminated from your position of Chief Executive Officer. If you are found attempting to conduct business or representing Bedrock Capital Group, Inc. or E F Block Georgia, LLC in any capacity, you will be held accountable, legally. Please remit any documents, keys, or any other Company property that may be in your possession to Richard J. Randolph III POA, Jamye Allen, immediately.

Please note that your employment with Bedrock Capital Group, Inc. DBA E F Block Georgia, LLC was never formally activated with new hire documents to include Executed New Hire Package (Application, Resume, NDA, Offer Letter, Driver's License, Social Security Card, I-9, W4, Direct Deposit Form)

*Actions being detrimental to the company* – On 10/12/2021 illegally withdrawing Bedrock Capital Group, Inc. a Foreign Profit Corporation from the State of Georgia Secretary of State.

***SEE BELOW***

# Georgia Limited Power of Attorney

BE IT ACKNOWLEDGED that I, Richard J. Randolph III________________
Full Name

[redacted]________________________, the undersigned, do hereby grant a limited and
social security number

specific power of attorney to Jamye L. Allen
Full Name

of 1502 River Green Dr. NW Atlanta, GA 30327
Address

as my attorney-in-fact.

Said attorney-in-fact shall have full power and authority to undertake and perform only the following acts on my behalf:

1. Residential Leasing Documents
2. Banking Documents
3. Residential/HOA Documents pertaining to The Atlantic Condominium
4. Banking Documents
5. Documents pertaining to Bedrock Capital Group, Inc., and its Subsidiaries
6. Medical Records
7. Personal Identification Documents

The authority herein shall include such incidental acts as are reasonably required to carry out and perform the specific authorities granted herein.

My attorney-in-fact agrees to accept this appointment subject to its terms, and agrees to act and perform in said fiduciary capacity consistent with my best interest, as my attorney-in-fact in its discretion deems advisable.

This power of attorney is effective upon execution. This power of attorney may be revoked by me at any time, and shall automatically be revoked upon my death, provided any person relying on this power of attorney shall have full rights to accept and reply upon the authority of my attorney-in-fact until in receipt of actual notice of revocation.

Signed this 20th__________day of September___________, 2021.

______________________________
Signature



Signature

I, Rilhia Holmes, the Witness, sign my name to the foregoing Power of Attorney this 20th day of September, 20 21, and, being first duly sworn, do declare to the undersigned authority that the Principal signs and executes this instrument as his/her Power of Attorney and that he/she signs it willingly, or willingly directs another to sign for him/her, and that I, in the presence and hearing of the Principal, sign this Power of Attorney as witness to the Principal's signing and that to the best of my knowledge the Principal is eighteen years of age or older, of sound mind and under no constraint or undue influence.

Rilhia Holmes

Signature of Witness

STATE OF Georgia

County of Fulton

Subscribed, sworn to and acknowledged before me by ______________________,
the Principal, and subscribed, sworn to and acknowledged before me by ______________________, the Witness, this 20th day of Sept., 2021.

MELINDA S FULKS
Notary Public - State of Georgia
Clayton County
My Commission Expires Aug 24, 2022

(Notary Seal)

(Signature of Notary Public)